IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESS ALBERT JAMES GIGER, JR.,<br><br>              Petitioner,<br><br>vs.<br><br>RALPH DIAZ, Secretary, California Department of Corrections and Rehabilitation,<br><br>              Respondent. | No. 2:19-cv-01052-JKS<br><br>MEMORANDUM DECISION |

Jess Albert James Giger, Jr., a former state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. The Petition indicates that Giger was discharged to parole prior to the filing of the Petition.[1] Respondent has answered, and Giger has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On May 17, 2016, Giger was charged with two counts of assault with a deadly weapon (a knife and a bicycle chain) in connection with a 2016 altercation with a security guard. The information further alleged as to both counts that Giger personally used a deadly weapon. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Giger:

---

[1]     A jurisdictional prerequisite of 28 U.S.C. § 2254 is that the petitioner be "in custody pursuant to the judgment of a state court." The conditions and restraints inherent in parole are sufficient to satisfy the custody requirement. *Jones v. Cunningham*, 371 U.S. 236, 242 (1963). Giger is thus currently in the custody of the California Department of Corrections and Rehabilitation, and the Petition is properly before this Court.

The victim was a uniformed security guard, patrolling near a pizza restaurant in the afternoon. He saw two men sleeping on a nearby hill and asked them to move. They said okay.

The victim returned to his rounds, but when he came back, the two men were again sleeping on the hill. The victim again asked them to leave. One of the loiterers said he was just sneaking in a nap but would leave. Ten minutes later, the men still had not left. The victim told them it was time to go.

At that point, [Giger] arrived on his bike and rode between the victim and the two men, staring at the victim as he left. When [Giger] returned, he yelled to the two men that they did not have to listen to the victim, who was not a security guard.

The victim approached [Giger] and [Giger] said, "Oh, man, I'm just looking out for their best interest. I just wanted them to have a chance. I didn't want you to send them to jail." The victim tried to take [Giger's] picture, but [Giger] pushed the phone away as the victim held it up.

[Giger] then punched the victim in the temple. The victim wrestled [Giger] to the ground and tried to pin him down. [Giger] had his bike in front of him, and as the two struggled on the ground, the bike stayed between them. During the struggle, the victim held down a button on his phone to dial 911.

At some point, the victim saw [Giger] had a silver multi-tool in his hand. [Giger] was wielding it like a knife and tried to stab the victim with it. The victim received stab marks on his boot and bruises on his foot.

After he saw the tool, the victim stood up. At some point, he was able to take the tool from [Giger] and throw it toward a nearby building. [Giger] then sat on the ground as though he was out of energy.

The victim turned his back and talked with the 911 operator. He then heard the two loiterers say, "No, no, don't do it." The victim turned to see [Giger] wielding the chain from his bike and a bike seat.

[Giger] swung the chain at the victim's face. The victim blocked with his arm, leaving a welt and swelling that took several weeks to heal.

The victim saw another security guard and hollered and waved. Seeing the other security guard, [Giger] put his chain and seat back on his bike and rode off. After he was arrested, the victim identified [Giger] to the police. When he did, [Giger] asked, "Are you even a fucking security guard?"

*People v. Giger*, No. C083347, 2019 WL 394633, at *1-2 (Cal. Ct. App. Jan. 31, 2019).

Giger pled not guilty and proceeded to a jury trial on July 11, 2016. At the conclusion of trial, the jury found Giger guilty as charged. The trial court subsequently sentenced him to an aggregate imprisonment term of 5 years.

Through counsel, Giger appealed his conviction, arguing that: 1) the trial court erred in precluding Giger from impeaching the complaining witness with evidence of his prior misdemeanor conviction for shooting near a dwelling; and 2) the trial court erred in imposing consecutive terms without stating reasons. The Court of Appeal unanimously affirmed the judgment against Giger in a reasoned, unpublished opinion issued on January 31, 2019. *Giger*, 2019 WL 394633, at *4. The California Supreme Court summarily denied review on April 10, 2019.

Giger timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated June 6, 2019. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Giger contends that the trial court's refusal to allow him to impeach the complaining witness with his prior conviction violated Giger's rights to present a defense and confront an adverse witness.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Giger has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

Giger argues that the trial court violated his constitutional rights to confrontation and to present a defense when it refused to allow Giger to impeach the complaining witness with his prior misdemeanor conviction for shooting near a dwelling. According to Giger, the prior conviction was admissible as a crime of moral turpitude to impeach the complaining witness's

character for honesty and veracity.  On direct appeal, the California Court of Appeal considered

and rejected this claim as follows:

A. <u>Background</u>

During trial [Giger] asked to be allowed to impeach the victim with a prior misdemeanor conviction, that is, a conviction for firing a gun in the proximity of an occupied building in violation of Fish and Game Code section 3004.

In pertinent part, Fish and Game Code section 3004 provides: "It is unlawful for a person, . . . while within 150 yards of an occupied dwelling house, residence, or other building, . . . to either hunt or discharge a firearm or other deadly weapon while hunting. The 150-yard area is a 'safety zone.'"

Defense counsel argued the offense was analogous to a conviction for discharging a firearm in a grossly negligent manner (Pen. Code, § 246.3, subd. (a) ), which is a crime of moral turpitude.  He noted the victim had originally been charged with that section but had pleaded to Fish and Game Code section 3004.  He argued the two statutes involve the same risk.

The trial court asked whether the conviction should be excluded under Evidence Code section 352 (statutory section references that follow are to the Evidence Code unless otherwise stated) and allowed the parties to brief the issue.

Defense counsel submitted a brief stating the victim had been hunting rabbits and birds with his brother, without a license, when he fired a gun in close proximity to a neighbor's home and the bullet broke a sliding glass door.  Defense counsel argued the victim had engaged in grossly negligent conduct analogous to that seen in cases finding shooting into an inhabited dwelling to be an offense of moral turpitude.

The court excluded the evidence under section 352, finding its probative value was outweighed by its prejudicial effect with respect to confusing the issues.  The court also noted the age of the prior conviction (he was convicted in 2008, eight years before the trial), the trial was in 2016.

B. <u>Analysis</u>

On appeal, defendant asserts excluding the evidence under section 352 was an abuse of discretion.  He argues the prior conviction was a crime of moral turpitude, reasoning it is similar to a crime of moral turpitude, namely, grossly negligent discharge of a firearm and discharging a firearm at an inhabited dwelling.  He adds, the crime was only eight and a half years old, and there was no substantial danger of the jury confusing the issues.  He maintains the ruling violated his right to present a defense and confront and cross-examine adverse witnesses.

A misdemeanor conviction involving moral turpitude is admissible to impeach a witness in a criminal trial.  (*People v. Wheeler* (1992) 4 Cal.4th 284, 295.)

Here, denying the request to impeach was proper because a Fish and Game Code section 3004 violation is not a crime of moral turpitude. "Moral turpitude" is the " 'general readiness to do evil.'"  (*People v. Castro* (1985) 38 Cal.3d 301, 315.)  Whether a conviction involves moral turpitude turns on whether one can reasonably infer a general

readiness to do evil from the "'"least adjudicated elements"'" of the offense. (*Donley v. Davi* (2009) 180 Cal. App. 4th 447, 458.)  The facts of the actual violation are not considered.  (*Ibid.*)

    A general readiness to do evil cannot be inferred from the least adjudicated elements of a Fish and Game Code section 3004 violation.  The plain language of the statute indicates all that is required is being within 150 yards of certain structures while hunting or discharging a firearm or other deadly weapon.  Any number of mistakes of minimal culpability could run afoul of that statute, including simply not knowing that structures set forth in Fish and Game Code section 3004 are within 150 yards of the weapon as it is fired or not knowing that nearby structures were occupied.  Thus, it is not a crime that involves a readiness to do evil and not a crime of moral turpitude.

    While Penal Code section 246.3 also is a general intent crime, a violation of that statute requires that the defendant negligently discharged a firearm in a manner that could result in death or serious bodily injury and, thus, a crime involving immoral conduct. Accordingly, the victim's prior Fish and Game Code misdemeanor conviction was not a crime of moral turpitude.  For that reason, precluding impeachment of the victim with that conviction was not error.

*Giger*, 2019 WL 394633,a t *2-3.

It is well-settled that a criminal defendant has a constitutional right to present a defense.

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  This right is not, however, without limitation.

"The accused does not have an unfettered right to offer testimony that is incompetent, privileged,

or otherwise inadmissible under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400,

410 (1988).  "[S]tate and federal rulemakers have broad latitude under the Constitution to

establish rules excluding evidence from criminal trials."  *United States v. Scheffer,* 523 U.S. 303,

308 (1998); *see Crane,* 476 U.S. at 689-690; *Marshall v. Lonberger,* 459 U.S. 422, 438, n.6,

(1983); *Chambers v. Mississippi,* 410 U.S. 284, 302-303 (1973); *Spencer v. Texas,* 385 U.S. 554,

564 (1967).  "Thus, a trial judge may exclude or limit evidence to prevent excessive

consumption of time, undue prejudice, confusion of the issues, or misleading the jury.  The trial

judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or

disproportionate."  *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations

omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

Moreover, the Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Indeed, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution." *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967). A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005).

California law authorizes "the use of any felony conviction which necessarily involves moral turpitude" for impeachment of witnesses in criminal cases, subject to the trial court's "discretion to exclude marginally relevant but prejudicial matter." *People v. Castro*, 696 P.2d 111, 113 (Cal. 1985). Here, the Court of Appeal concluded that the trial court had not abused its

discretion by refusing to allow this impeachment on the ground that "the victim's prior Fish and Game Code misdemeanor conviction was not a crime of moral turpitude." *Giger*, 2019 WL 394633.

To the extent Giger challenges the state court's determination that the prior conviction did not involve moral turpitude, again, federal habeas relief is not available for state evidentiary errors. *Estelle*, 502 U.S. at 72. Most importantly, the Supreme "Court has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." *Nevada v. Jackson*, 569 U.S. 505, 511 (2013). And while the right to confront witnesses includes in some circumstances the right to discredit a witness through introduction of evidence of a prior crime, *see Davis v. Alaska*, 415 U.S. 308, 316 (1974),[2] the Confrontation Clause does not relieve a defendant of the requirements of the rules of evidence.

---

[2] The Supreme Court's decision in *Davis* does not compel a different conclusion here. In *Davis*, the petitioner had been convicted of grand larceny and burglary following a trial in which the trial judge prevented defense counsel from cross- examining a key witness concerning his adjudication as a juvenile delinquent relating to a burglary and his probation status at the time of the events. *Davis*, 415 U.S. at 309-11. Defense counsel sought to introduce the witness's juvenile record on cross-examination not as a general impeachment of the witness's character but rather to show bias and prejudice against the defendant because the witness, who was then on probation, might have identified the defendant out of fear or concern that the police might believe he had committed the crime in issue, thereby jeopardizing his probation. *Davis*, 415 U.S. at 311. Following the affirmance of petitioner's convictions by the Alaska Supreme Court, the United States Supreme Court reversed and remanded, holding that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on the witness's testimony. *Id.* at 317. In particular, the court ruled that counsel should have been permitted to ask the witness not only "whether he was biased," but also "why [he] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id.* at 318. The *Davis* Court emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316-17. The proffered evidence here, however, does not share the probative value of the evidence at issue in *Davis*. The complaining witness's prior misdemeanor conviction would be proffered here solely for general impeachment of the witness's character and not to demonstrate bias or other motivation to lie.

As previously discussed, neither the confrontation clause nor the right to present a defense grants a defendant the unfettered right to cross-examine a witness on lines of inquiry that are marginally relevant or inadmissible.  *Cf. Egelhoff*, 518 U.S. at 42; *see also Doughton v. Foulk*, 584 F. App'x 842, 842 (9th Cir. 2014) (rejecting claim that the trial court's exclusion of impeachment evidence against a prosecution witness violated his Sixth Amendment confrontation rights because "[t]he Supreme Court has never held that the Confrontation Clause entitles a defendant to introduce *extrinsic evidence* for impeachment purposes") (citation omitted).  Accordingly, the state court's denial of this claim neither contravenes nor unreasonably applies Supreme Court authority, and Giger is not entitled to federal habeas relief.

## V. CONCLUSION AND ORDER

Giger is not entitled to relief on the ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 4, 2019.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
